# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Julio C.P.M., | Civ. No. 26-1268 (JWB/ECW) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *in her official capacity as Attorney General of the United States*; Kristi Noem, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; Todd Lyons, *in his official capacity as Acting Director of Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*; and Joel Brott, *in his official capacity as Sherburne County Sheriff*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

---

Sara Larson Glesne, Esq., Ojala-Barbour Law Firm, counsel for Petitioner.

Ann M. Bildtsen, Esq., and David W. Fuller, Esq., United States Attorney's Office, counsel for federal Respondents.

---

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(1)(A)(i) if he entered the country on a grant of humanitarian parole that has since expired. The answer is no. Section 1225 does not authorize Petitioner Julio C.P.M.'s detention because he was already in the country when he was detained and not "arriving in the United States."

## BACKGROUND

Petitioner is a citizen of Nicaragua. (*See* Doc. No. 1, Petition ¶¶ 16, 28; Doc. No. 7-1, Govt. Ex. 1.) He entered the United States at Fort Lauderdale, Florida on July 2, 2023. (Petition ¶¶ 3, 7, 16, 29–30; Doc. No. 1-2, Pet. Ex. B; Govt. Ex. 1 at 3.)

Petitioner alleges that he obtained Nicaraguan Humanitarian Parole ("NHP") prior to entry. (Petition ¶¶ 1, 3, 7, 16, 30; Pet. Ex. B (I-94 identifying Petitioner's class of admission as "NHP").) Respondents counter that Petitioner was granted NHP on July 2, 2023, the date that he entered the country. (Doc. No. 6, Answer at 2; Govt. Ex. 1 at 3.) 8 U.S.C. § 1182(d)(5) serves as the legal basis for granting humanitarian parole. (*See* Doc. No. 7-4, Govt. Ex. 4 at 1; Doc. No. 7-5, Govt. Ex. 5 at 1.)

On May 22, 2024, Petitioner applied for asylum based on his fear of future prosecution for his political views. (Petition ¶¶ 1–2, 4, 31; Doc. No. 1-1, Pet. Ex. A.) Petitioner's NHP expired on June 12, 2025. (*See* Doc. Nos. 1-2, 1-3, Pet. Exs. B, C.)

On December 24, 2025, Petitioner was arrested by Immigration and Customs Enforcement and detained at the Sherburne County Jail in Elk River, Minnesota. (Petition ¶¶ 12, 16, 32; Govt. Ex. 1 at 2.) Petitioner alleges no warrant was issued for his arrest. (Petition ¶¶ 9, 61.) Respondents dispute that allegation and include an I-200 warrant dated December 24, 2025 with their answer. (Answer at 2; Doc. No. 7-2, Govt. Ex. 2.)

Both parties acknowledge that Petitioner was issued a Notice to Appear, also dated December 24, 2025. (Petition ¶ 5; Pet. Ex. C Doc. No. 7-3, Govt. Ex. 3.) The Notice designates Petitioner as "an arriving alien" and charges him with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I). (Pet. Ex. C at 1, 4; Govt. Ex. 3 at 1, 4.) The Notice placed

2

Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a, which governs full removal proceedings before an Immigration Judge. (Petition ¶ 5; Pet. Ex. C at 1; Answer at 2; Govt. Ex. 3 at 1.)

Since his arrest, Petitioner has requested and attended two custody redetermination hearings before an Immigration Judge. (Answer at 2–3; *see also* Govt. Exs. 4, 5.) In both hearings, the Immigration Judge held that she did not have jurisdiction to redetermine Petitioner's custody status because he is an "arriving alien." (*Id.*)

## DISCUSSION

### I. Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the immigration context. *See id.* at 687–88.

### II. Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He

3

does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

A.   8 U.S.C. § 1225(b)(1)(A)(i)

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a).

Section 1225(b)(1) governs the process for inspecting noncitizens arriving in the United States. At the initial screening stage, an immigration officer evaluates whether a noncitizen "who is arriving in the United States . . . is inadmissible" either because they used fraud or willful misrepresentation to obtain an immigration benefit or do not possess a valid unexpired travel document, such as a visa. *Id.* § 1125(b)(1)(A)(i).

If the screening officer finds the noncitizen is inadmissible for either reason, then the officer must order the noncitizen removed without further hearing or review—unless the noncitizen expresses their intent to apply for asylum or a fear of persecution. *Id.* In that situation, the officer must refer the noncitizen for an interview with an asylum officer. *Id.* § 1225(b)(1)(A)(ii).

If the interviewing asylum officer determines there is a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application

4

for asylum." *Id.* § 1225(b)(1)(B)(ii). But if the officer determines there is no credible fear, the officer must order removal and prepare a written record of the determination. *Id.* § 1225(b)(1)(B)(iii)(I)–(II). The noncitizen may then request "prompt review" of the credible fear determination by an Immigration Judge. *Id.* § 1225(b)(1)(B)(iii)(III). Noncitizens subject to this process "shall be detained pending a final determination of credible fear of persecution" and—if no credible fear is found—until they are removed. *Id.* § 1225(b)(1)(B)(iii)(IV).

Respondents contend that Petitioner "doubly falls" within § 1225(b)(1)(A)(i) because he is an "arriving alien" and inadmissible pursuant to 8 U.S.C. § 1182(a)(7) because his parole has expired. (*See* Answer at 1, 4–5.)

For support, Respondents point to 8 C.F.R. § 1001.1(q), which defines "arriving alien" and notes that "[a]n arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the [INA], and even after any such parole is terminated or revoked." (*Id.* at 4.) Respondents also refer to the Immigration Judge's finding that once Petitioner's parole expired, he "returned to the status he possessed at the time he sought entry into the United States on July 2, 2023—that of an arriving alien seeking admission." (*Id.* at 5–6.)

Respondents then explain that Petitioner's asylum application exempts him from immediate removal, but he still must be detained pursuant to § 1225(b)(1)(B)(IV), which states that "[a]ny alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution." (*Id.*)

Respondents' assertion that Petitioner falls within § 1225(b)(1)'s detention scheme

5

contravenes both the language and structure of the statute. The mandatory detention provision in § 1225(b)(1)(B)(IV) only applies if Petitioner is subject to the asylum review procedures in § 1225(b)(1).

Respondents argue that Petitioner is subject to those procedures because he is an "arriving alien" now that his parole has expired. But § 1225(b)(1)(A)(i) by its plain language does not apply to an "arriving alien"—it applies to "an alien . . . who is arriving in the United States." Congress could have used the phrase "arriving alien" but opted instead to use "an alien . . . who is arriving," Agreeing with Respondents' reading would render the "who is arriving" phrase meaningless.

As far as this Court can tell, no other court in the Eighth Circuit has considered the applicability of § 1225(b)(1) detention under the circumstances presented here. However, a number of other districts have rejected the arguments Respondents make here, holding that § 1225(b)(1)(A)(i) does not authorize mandatory detention of a parolee, even one whose parole has expired. *See, e.g.*, *Coalition for Humane Imm. Rts. v. Noem*, 805 F. Supp. 3d 48 (D.D.C. 2025); *Rodriguez-Acurio v. Almodovar*, Civ. No. 2:25-6065 (NJC), 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025). Although these rulings are not binding, their analysis is persuasive and aligns with the structure and plain meaning of the statute.

Statutory interpretation begins with the plain language of the statute and considers the ordinary meaning of the terms. *Union Pac. RR Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024); *see also Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427 (2019). The INA does not define the terms "arriving," "arrival," or "arrive", all of which appear throughout § 1225.

6

To "arrive" denotes reaching a destination. It does not mean an ongoing act that continues after getting to the intended destination. Similarly, the words "arriving," "arrival," and "arrive" as used in § 1225 to "refer to a process that occurs upon physical entry into the United States, not an interminable status that attaches to a noncitizen upon arrival." *Rodriguez-Acurio*, 2025 WL 3314420, at *20; *see also Coalition for Humane Imm. Rts.*, 805 F. Supp. 3d at 90. An ordinary understanding of "arrive" would not cover a noncitizen who had already approached the United States, undergone inspection, and was allowed to enter the country. *See Coalition for Humane Imm. Rts.*, 805 F. Supp. 3d at 90–91. This finding has been echoed across district courts. *See, e.g.*, *E.V. v. Raycraft*, Civ. No. 4:25-2069, 2025 WL 2938594, at *4 (N.D. Ohio Oct. 16, 2025) (listing cases).

Respondents' reference to 8 C.F.R. § 1001.1(q) is not persuasive. Federal courts are no longer required to defer to agency interpretations; instead, they are to exercise independent judgment and enforce statutes according to their plain meaning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024); *see also Montiel v. Raycraft*, Civ. No. 1:25-1610, 2026 WL 32076, at *3 (W.D. Mich. Jan. 6, 2026) (noting that "this Court is interpretating a statute, not a regulation" in response to Respondent's citation to the C.F.R.'s definition of "arriving alien"); *but see Karastoian v. Bondi*, Civ. No. 5:25-CV-00233, 2026 WL 194391, at *3–4 (S.D. Texas Jan. 22, 2026) (relying on 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. § 1001.1(q) to find that that once parole expires, the noncitizen "continues to be classified as an arriving alien").

The ordinary meaning of "arriving" as used in § 1225(b)(1)(A) does not apply to Petitioner. He arrived to the United States on July 2, 2023 and has since lived in the

7

country for more than two years. The expiration of his parole does not revert him to a noncitizen "who is arriving" to the country and subject to § 1225(b)(1)(A)(i). *See, e.g.*, *Qasemi v. Francis*, Civ. No. 25-10029 (LJL), 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) ("He has already arrived, was paroled, entered, and has now been present in the United States for over a year. None of that is changed by the fact that he has not been formally admitted."). Detention under § 1225(b)(1) does not apply here.

Respondents' reference to 8 U.S.C. § 1225(b)(1)(B)(IV) underscores the absurdity of treating Petitioner as a noncitizen who is arriving. That section requires detention pending a final credible fear determination for noncitizens arriving to the country who are deemed inadmissible but express an intention to apply for asylum or a fear of persecution. According to Respondents, Petitioner is subject to this provision because he has applied for asylum—even though he did so months after Respondents allowed him to enter and reside inside the country. But Petitioner is not expressing a fear of persecution to an immigration officer while arriving at the border; he described his fear in a paper application submitted from the interior of the country 10 months after entry. On these facts, detention pending referral for a final credible fear determination is nonsensical.

This also explains why neither the record of arrest, the arrest warrant, nor the Notice to Appear state that Petitioner indicated an intention to apply for asylum or a fear of persecution to the arresting officers as contemplated by § 1225(b)(1)(A), that those officers referred Petitioner for a credible fear interview under § 1225(b)(1)(A), that an asylum officer conducted a credible fear interview under § 1225(b)(1)(B), that the interviewing officer determined and prepared a report that Petitioner does not have a

8

credible fear of persecution under § 1225(b)(1)(B)(iii)(I)–(II), or that Petitioner requested review by an Immigration Judge under § 1225(b)(1)(B)(iii)(III).

There is no record evidence that any of these § 1225(b)(1) procedures have been followed here—and for good reason: they are not meant to apply to noncitizens arrested inside the country. The related detention provisions therefore do not apply either. In fact, the evidence from Respondents tends to indicate that their officers treated Petitioner as subject to discretionary detention under § 1226(a) and standard removal proceedings under § 1229a, not mandatory detention and expedited removal under § 1225(b)(1).

For these reasons, the plain language of 8 U.S.C. § 1225(b)(1)(A)(i) does not authorize mandatory detention of noncitizens like Petitioner whose humanitarian parole has expired. An expired parole and a subsequent interior arrest do not make him a noncitizen who is arriving to the country.

**B.     8 U.S.C. § 1225(b)(2)**

Respondents alternatively assert in a footnote that 8 U.S.C. § 1225(b)(2)(A) authorizes mandatory detention because Petitioner "is an applicant for admission and no longer has a basis for admission." (Answer at 5 n.2.)

As this Court has routinely held, Petitioner's arrest within the country years after he entered did not transform him into a noncitizen "seeking admission" as contemplated by § 1225(b)(2)(A). *See, e.g.*, *Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729, at * 3 (D. Minn. Oct. 8, 2025). The vast majority of district courts considering Respondents' assertion have similarly determined that the text, structure, and function of the INA all indicate that the § 1225(b)(2)(A) does not apply to noncitizens

9

like Petitioner who are present in the interior of the country. *See, e.g.*, *Avila v. Bondi*, Civ. No. 25-3741 (JRT/SGE), 2025 WL 2976539, at *5–7 (D. Minn. Oct. 21, 2025), *appeal docketed*, No. 25-3248 (Nov. 10, 2025); *Santuario v. Bondi*, Civ. No. 25-4296 (JRT/JFD), 2025 WL 3469577, at *2 (D. Minn. Dec. 2, 2025); *N.A.M. v. Noem*, Civ. No. 25-4737 (JRT/EMB), 2025 WL 3754145, at *1 (D. Minn. Dec. 29, 2025).

On this record, Petitioner's detention rests on a statute and an interpretation that do not apply and is unlawful. *Khalid B.Q. v. Noem*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 at 6 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 at 7 (D. Minn. Dec. 19, 2025). Thus, he is entitled to a writ of habeas corpus that grants his immediate release. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the INA that authorizes his continued detention, the Petition for a Writ of Habeas Corpus is granted, and Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

    1.    Petitioner Julio C.P.M.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

    2.    **Release.** Respondents shall immediately release Petitioner from custody.

He must be released in Minnesota. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiating Petitioner's return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3. **Notice.** Respondents shall file an update on the status of Petitioner's release by 1:42 p.m. on February 22, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been

11

removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4. Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

5. Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

6. Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 20, 2026  
Time: 1:42 p.m.

*s/ Jerry W. Blackwell*  
JERRY W. BLACKWELL  
United States District Judge